Case number 20-1342 Eric Earnest Jr v. Genesee County MI at all. Arguments not to exceed 15 minutes per side. Mr. Cabot, you may proceed for the appellant. Good morning, your honors. May it please the court, Sean Cabot on behalf of the appellant Eric Earnest Jr. And at this time I would request three minutes for rebuttal. Your honors, as I'm sure you're aware, this is a Fourth Amendment excessive force case where the district court erroneously granted summary judgment. The events, of course, of this early morning encounter, which occurred between 2 and 3 a.m., were captured on video. That video was submitted to the district court in response to defendant's motion for summary judgment. However, what's curious is that the district court's opinion is void of really any substantial discussion or analysis of that video. I looked at the video, counsel, and I didn't see much there to make an analysis, as you say. Well, I think there's sufficient video there to show, to create a question of fact that excessive or unreasonable force occurred. You have a number of instances. In what way? Well, you have... He was trying to get this guy in an ambulance, for goodness sake. Well, you have the instance where he slammed against Mr. Earnest's vehicle. There was no reason for that at all. You also have at a minimum the two or three times that he slammed to the ground. There's certainly no reason for that. You also very clearly in one part of the video see the officer picking him up by the handcuff. There's certainly no reason for that. And it's those, at a minimum, those instances of force that a reasonable jury could conclude was unnecessary. And that's the concern with the district court opinion is that there was no real effort at all at analysis of the facts of that video to sustain... Your case of excessive force rests exclusively on that film. Yes, because the plaintiff acknowledged he didn't have much memory until essentially going into the ambulance. So the only thing that we need to consider as to whether there was excessive force is that film. That's true. And that's why there's case law, your honors. For example, the Hanson v. Madison County Detention Center case, which was 736 Fed Act 521, it's a 2018 case. The court stated that where there's a videotape that captures the events in question, the court must view those facts in the light depicted by the video. The court also went on to say in that case that where reasonable jurors could interpret the video evidence differently, summary judgment is not appropriate. And in this case, just the few instances that I've already mentioned of the excessive force getting slammed against the vehicle, getting thrown down on the ground approximately three times, also being lifted up by the handcuffs, are multiple issues of question of fact that jurors could look and say, you know what, that is unreasonable, or it isn't, or it was reasonable. When he was picked up by handcuffs, what happened to him? Break his arm? There was deposition evidence that there were scratches on his wrist, your honor, which would certainly indicate... The force? Well, yes, because there was no need to lift him up by the handcuff. In fact, there's case law discussing that, that lifting up an arrestee by the handcuff is excessive force. And so here, the district court really, again, made no analysis whatsoever. In fact, in the entire opinion, I think the word videos mentioned three times, and there's no analysis as to specific parts of that video, certain actions depicted in the video. And clearly when the video is watched, a juror could make the conclusion, hey, there was unreasonable force used here. So that's why summary judgment was inappropriate. And in fact, it's another reason that the district court opinion should be reversed, is because the district court ran afoul of its summary judgment obligations. In the case of Gadawa versus Bird, which was a 798 F3rd 457 case, 2015, the court clearly said in that case that to the extent the facts shown in videos can be interpreted in multiple ways, or if videos do not show all relevant facts, such facts should be viewed in the light most favorable to the non-moving party, which in this case is the plaintiff. That did not happen in this case in any way, shape, or form. So that's certainly one reason that, and probably the most important reason why the district court opinion should be reversed. The other issue that is curious is that the court, there was presented to the district court a number of photographs, both of the booking photographs and photographs taken when he was released from the jail that show significant injuries to his face and head, including swelling and a distinct black eye. Now that's significant because it shows at a minimum force was used and in plaintiff's opinion, unreasonable force was used. But regarding these injuries, the district court opinion on page six said the extent of plaintiff's injuries is not relevant to the excessive force analysis. That is a blatant, erroneous statement of the law. It cited the case of Higgins versus Franklin County, which was a Sixth Circuit case in 2012. But that proposition is not accurate. In Kingsley versus Hendrickson, which was a United States Supreme Court case decided in 2015, that case clearly said that considerations such as the following may bear on the reasonableness or unreasonableness of the four shoes. And the very first factor that the United States Supreme Court looked at was the I said, did you hit him in the face? His answer, and this is pages 106 and 107 of his deposition, which were part of the record, your honor. His response was, I did not aim for the face. I do not know if I struck him in the face. It's not a target area. So he can't say that he did not hit him. And your client can't say. Correct. And we can't see it on TV. So how do we determine, I mean, your client was so drunk he was passed out. I mean, how do we determine where he got the blackout? Well, here's where the deposition of defendant Miller goes to show that very point. I specifically asked him in his deposition, when you initially went up to the car and you saw Mr. Earnest in that vehicle, when you were taking him out of the vehicle, did you see any injuries on him? Defendant Miller unequivocally said, no, I did not see any injuries. So you have defendant Miller, who's the first on the scene, the first to be within. But he also went in an ambulance after that. He was also in a hospital. Who knows when that occurred? And that's precisely an excellent point, Your Honor. Do those things, Mr. Cabot, argue, the things that you just mentioned and the Judge Seheinrich just mentioned, is that what you argue would create the basis or the justification for this question being put to a jury? That's exactly what I was getting to, Your Honor, is that you certainly have the defendant initially saying who's right there. I mean, there's no question he's within inches of Mr. Earnest. He says there's no injuries. There's no injuries on his face, nothing. And then you have all these injuries later. That's in light of the video. You know, this isn't a video where it shows an arrestee being kicking and flailing. It doesn't show that. And so a reasonable juror looking at that testimony of, I didn't see any injuries, looking at the photographs at the end of it showing a distinct black eyes and distinct swelling in the face and numerous other injuries. And you also, in the video, I think it's sometime after the four-minute mark, you hear him, Defendant Miller, hitting Mr. Earnest. Okay. I have another question for you. So let's assume hypothetically that what you say is what happened. Let's assume that. Even if we assume it, where do we, how do we, how does this indicate that the training by the county of Genesee was insufficient? The lack of training led to the injuries? Well, you have the, that goes to the testimony of Defendant Miller himself. I mean, he specifically said the only use of force training he had was in the academy. And that was about six years prior to the incident that we're having here. He also said that in the six or so years that he worked for the county, there was no performance evaluations done. Those items are very important, especially the training. And I see my time is up, but I'll finish my statement if that's okay. Um, training obviously is very important to re-instill and remind the officers, hey, you have a duty not to use unreasonable force. You have a duty to use only the force that's consistent with the alleged force being used against you. As far as the performance evaluations, that's a consistent reminder to these officers as well. You're being watched. Your actions are being watched. Your actions are being monitored so that, look, you better behave in accordance with the law. And when we take those factors out, it's basically saying carte blanche to these officers, do what you want. There's not going to be any repercussions. All right. Thank you. And we'll hear from a counsel for defendants, Ms. Masseron. Thank you. Good morning, your honors. Mary Masseron on behalf of the county and Deputy Miller. May it please the court. The district court was correct in granting Deputy Miller and the county summary judgment because the minimal use of force here to subdue earnest was not unreasonable. And in any event, he was protected. Miller was protected with qualified immunity. The district court went very carefully through the facts in this case, and the facts are laid out consistently in the testimony of Deputy Miller, in the testimony of the two EMT professionals who were on the scene, as well as in the video. And the plaintiff repeatedly false the district court for failing to elaborate as much as the plaintiff wishes he had on the specific time frame of the video. But the district court is not obligated to do that. The district court very the facts laid out the basis for using minimal force, laid out the... Well, Ms. Masseron, with the minimal force that was used, how did he get all of these injuries? I mean, Mr. Cabot said when Officer Miller got on the scene, there were no injuries. And after minimal force, he ended up having to go to the hospital, had a black eye, had some other instances, was lifted up by the cuffs. How do you reconcile those two things? This is a case in which the earnest was repeatedly resisting, getting back up, refusing to allow himself to be handcuffed over the course of the time within which the officer was trying to get him handcuffed. And in fact, ultimately, the officer had to get help from one of the EMTs to get this individual into handcuffs. The force used, even if you assume the black eye came from the officer, which I think is sheer speculation, it's very clear that the officer testified and the EMT individuals testified. He was trying to use a takedown procedure, get this individual to the ground. This individual repeatedly got back up rather than allowing himself to be handcuffed. And in fact, this is a case in which this court's precedent would have allowed the officer to use a taser, which is certainly much more serious, potentially, than the empty-handed strikes he eventually used in his effort to get handcuffs on this guy. So it seems to me, when you're talking about the force, yes, the plaintiff is saying he had scratches to his wrist and he had a concussion. According to the hospital records, I think it was a mild concussion, but regardless, there was some right and obligation to try to get this guy into handcuffs so he could be transported to the hospital and then taken into custody for resisting and or the intoxication and so forth. That was within the officer's right. This court's precedent is very strong that he had the right to use force given those circumstances, which he did. And the fact that the individual repeatedly refused to stay on the ground, repeatedly refused to put his arms behind his back, pulled his arms away, he was actively resisting. And I think the video shows that. Plaintiff wants to make a fact question out of the video, but this isn't a circumstance where the plaintiff can say, well, I was there and I remember in the video didn't show these other things, that therefore there's a fact question. The plaintiff doesn't remember. All of the individuals who were there consistently explained that he was resisting, wouldn't stand the ground, wouldn't put his hands behind his back. They struggled extensively after his initial, you know, taking a swing at the EMT when they were trying to get him out of the car so he could be taken to the hospital, given the concern that he had been smelling of intoxicants and knocked out unconscious in some fashion in the vehicle when the officer arrived and when the EMT arrived. So I don't think there's any basis here for reversal or finding a fact question. It simply doesn't exist, even taking the video into account, even taking the injuries into account. And I think the district court's decision made that clear. In terms of this court's decision and Hayden V. Green made clear, it's okay to pull an arrestee out of the car and put on the ground, jerking the collar downward, Wozung versus Rawson. It's okay to take an arrestee down when he fails to take his, put his hands behind his back. And Hayden said in comparable circumstances that tasing would have been okay, which this officer said, look, I'm going to have to tase you, but nevertheless exercised restraint and chose to use the less severe form of force in his effort to get this individual under control so he could be taken to the hospital. In any event, even if the court were to disagree with the district court's finding that the force was reasonable, I don't believe there's any precedent from this court that would, or from the U.S. Supreme Court, that would support a denial of qualified immunity on the part of this officer who was trying to do his job, trying to make sure this individual could be taken into custody, could be taken to the hospital, could be checked out to see his condition given the state in which he was found and given the difficulty they had arousing him when they arrived. It is possible that the concussion came from his hitting his head on the steering wheel when he was in a single vehicle crash and later found at the side of the road. I mean, there isn't any real basis for concluding whether that concussion came from the takedown or whether that concussion was there earlier. Now, didn't he, didn't he honestly say that when the truck stopped he simply rolled it onto the curb? He didn't admit to an accident, right? A single car accident. No, he did not admit to a single car accident. And we don't know whether his statement is true or not. Do we? We know that he doesn't remember. So he remembers nothing from the time, well certainly from before the time when the EMT officer and Deputy Miller tried to rouse him. I think there is some uncertainty about his explanation about how the car got there. I agree with that. Okay. Thank you. I think that it's important with respect to the claim against the county. And of course, if the court agrees with my position with respect to Miller, it doesn't need to go any farther. The claim against the county is dismissed. And I think the district court's opinion was very strong in my view. But since you asked questions about the and I would say the following. It's very clear from Miller's testimony that he went through the police academy, which is a very comprehensive set of training. There's also testimony in the record showing that if you were assigned a taser or if you were allowed to use the OC spray, the county had an obligation that you have a use of force training every two years. So it's not accurate to suggest that the county had no ongoing training. And finally, there's no precedent from the US Supreme Court or this court that I'm aware of, that requires more training than that, or that requires a specific policy about how you approach an Miller should have announced himself in some further way, or that there should have been training. And at that point, it seems to me, it doesn't really make sense, because Miller came up, spoke regularly, hey, buddy, hey, buddy, you got to wake up, so forth, tried to wake him, then when he couldn't rouse him called for the EMS properly. So because he was concerned about this individual's condition, wanted to be sure that medical care could be provided, whether it was from potential health hazards, from intoxication, or from what appeared to be a single vehicle accident. That was appropriate on Miller's part. And there wasn't any county training that would have suggested some different approach at the outset of this incident. There's a lot more that could be said, but I think the briefs have been fairly consistent, and I'm happy to answer questions. But I don't want to take more of the time of the court than is necessary to present the key points of my argument. Well, I think we have your argument in hand, and it does not appear that there are additional questions. So we'll take rebuttal at this time. Thank you. Thank you, Your Honor. And again, I'll be brief as well. Again, the precedent of this circuit is that when we look at an excessive force case, we have to consider the totality of the circumstances. And that begins at the very first time that Defendant Miller encounters Mr. Ernest, and to kind of go off of what Judge Donald was asking about the placement of Mr. Ernest's vehicle, it's very important, again, to go back to Defendant Miller's own testimony that says, you know, there was no damage to the vehicle. Only two of the wheels were on the curb, and he said the vehicle was resting on a guide wire of a telephone pole. There was no impact damage. There was nothing to suggest that there would have been an impact such that Mr. Ernest hit his head on a steering wheel. But even if that is a question, that is a question of fact that has to be resolved by a jury and not the district court. And again, the question of how do we get these injuries, that is left up to a jury. And for the district court to say that you can't even consider the extent of injuries in an excessive force case is just patently wrong for the reasons that we previously set forth, because these injuries do show that something occurred. And as far as these empty hand strikes, it's important to note that when I followed up with that in Mr. Miller's deposition, which is part of the record, it was very clear that these were balled up and he said yes. And again, that goes in the question of whether such actions were reasonable, given what the video shows. The video does not show a wildly out of control Mr. Ernest. It doesn't, as far as, you know, not giving hands or giving hands, the video is unclear on that. And so when a video is unclear, the precedent says you let the jury determine that, but a jury could also easily see in that video that you have, you know, an officer on him and a very large EMT on him, such that three, four, 500 pounds of human being on your back may not be able to let you release your hands. And there's parts of the video that I believe says, I can't, I can't. And so when you consider all of that and the totality of the circumstances and the fact that there's video evidence that certainly supports a question of fact as to unreasonable force being used, the appellant respectfully requests that this court reverse the district court. Thank you. All right. Thank you very much. And the arguments having been completed, the case is submitted.